UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEORGE FRAZIER,          :

    Plaintiff,           :

                                CIVIL ACTION NO.

v.                       :

                                1:06-CV-100-MHS

WILLIAMS FUND PRIVATE    :
EQUITY GROUP, INC., et al.,
                           :

    Defendants.

## ORDER

This action is before the Court on the motion of defendant Williams Fund Private Equity Group, Inc. (Williams), to stay suit pending arbitration and to compel arbitration, and on the motion of plaintiff George Frazier to reassign this case. For the following reasons, the Court grants defendant's motion and denies plaintiff's motion.

Background

Plaintiff Frazier filed this action on December 20, 2005, in the Superior Court of Gwinnett County against Williams and Kenneth Mitan. In his complaint, Frazier alleges that he and Williams entered into a Stock

Purchase and Real Property Purchase Agreement under which he agreed to sell Williams all the stock of S & B Architectural Products, Inc. d/b/a Perma-Clad Products (Perma Clad), together with a manufacturing facility located in Sugar Hill, Georgia, for $1.7 million.[1]  Under the contract, Williams was to pay $600,000 down at the closing and execute a note for the balance to be paid in installments over five years. (Compl. ¶¶ 7-8.)

The complaint further alleges that at the closing on August 30, 2005, Williams made no down payment and executed a note in the amount of $774,773.27, which was later adjusted upward to $1,087,362.19 based on a credit allowed for invoices generated by Perma Clad during the thirty days after closing.[2] (Compl. ¶¶ 9-10.) According to the complaint, after making the initial payment due under the note, Williams failed to make any further

---

[1] Williams contends that the transaction involved the sale of two companies, Perma Clad Products, Inc., and S & B Architectural Products, Inc. The documents before the Court, however, do not reflect this. A letter of intent attached to the complaint refers to "S & B Architectural Products, Inc. d/b/a Perma Clad Products," and the Stock Purchase and Real Property Purchase Agreement provides for the sale of the stock only of S & B Architectural Products, Inc.

[2] According to Williams, the cash down payment was eliminated and the amount of the note reduced at closing based on adjustments provided for in the contract due to the amounts of certain variables. These adjustments were reflected on a closing statement executed by Frazier at the closing.

payments and also defaulted on other payment obligations under the contract. (Compl. ¶¶ 12-17.) The complaint alleges that Williams and defendant Mitan, who allegedly used the alias "John Adams" and held himself out to be Williams' "Senior Analyst," were in fact engaged in a fraudulent scheme to obtain Frazier's business and property and then loot the company of all its assets, a scheme that Frazier alleges Mitan has practiced in many other jurisdictions resulting in numerous other lawsuits being filed against him. (Compl. ¶¶ 29-34.)

The complaint asserts claims against defendants for breach of contract, breach of fiduciary duty, violation of the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act, conversion, and unjust enrichment. Plaintiff seeks rescission of the contract; cancellation of the deed conveying the real property; an injunction awarding him possession of the property or, in the alternative, the appointment of a receiver; imposition of a constructive trust; and recovery of compensatory and punitive damages and expenses of litigation, including attorneys' fees. Upon filing this action, plaintiff also filed an Emergency Motion for Ex Parte Order and Injunctive Relief and obtained an Ex Parte Order and Injunction from the superior court granting him

3

exclusive possession and control of Perma Clad and the manufacturing facility.

After defendants were served, they removed the action to this Court and defendant Williams filed a motion to stay proceedings and for an order compelling arbitration pursuant to an arbitration clause contained in the Stock Purchase and Real Property Purchase Agreement. Plaintiff then filed a motion to reassign this case to Judge Beverly B. Martin on the grounds that it is related to an earlier-filed pending case assigned to Judge Martin. The Court addresses both motions below.

Motion to Reassign Case

Plaintiff contends that this case is related to Williams Fund Private Equity Group, Inc. v. Ross, No. 1:05-CV-3166-BBM (filed December 15, 2005). In Ross, Williams alleges that defendant Billy P. Ross breached a September 15, 2005, contract under which Williams purchased all of the stock of Super 1, Inc. from Ross for $2.6 million. Williams asserts claims against Ross for conversion, tortious interference with business relations, trespass, and breach of contract. Ross has filed a counterclaim and third-party complaint against

4

Williams and Mitan, respectively, alleging that they engaged in a fraudulent scheme similar to the one alleged by Frazier in this case, i.e., that they purported to purchase Super 1, Inc. so they could drain the company of its assets and leave Ross with nothing but the debts.

Plaintiff contends that <u>Ross</u> and this case are related because they "involve the same property (money) and the same issue of facts [sic] or arise out of the same events or transactions," and because Williams and Mitan "are common to both cases." (Pl.'s Mot. to Reassign Case at 4.) In opposition, Williams contends that the two cases involve different property and different issues of fact, and arise out of entirely separate transactions, and that the presence of common parties is insufficient to establish relatedness. The Court concludes that the two cases are not related as that term is defined in the Court's Internal Operating Procedures. Therefore, reassignment is not appropriate.

Under Rule 905-2 of the Court's Internal Operating Procedures, related cases must be assigned to the same judge. The rule defines "related" as follows:

> For purposes of assignment, cases are related whenever the later-filed case involves:
> (1) Property included in an earlier numbered pending suit.
> (2) The same issue of fact or arises out of the same event or transaction included in an earlier numbered pending suit.
> (3) The validity or infringement of the same patent, copyright, or trademark included in an earlier numbered pending suit.
> (4) Appeals arising out of the same bankruptcy case and any case related thereto which have been decided by the same bankruptcy judge.
> (5) Repetitive cases filed by *pro se* litigants.
>
> With respect to the second category, a case is NOT related if it has the same LEGAL issue; if any issue of fact is only similar rather than identical; or if the event or transaction is only similar rather than identical.

Rule 905-2(a), Internal Operating Procedures.

Plaintiff contends that subsections (1) and (2) of the Rule apply here. However, contrary to plaintiff's contention, this case and Ross do not involve the same property or the same issues of fact, nor do they arise out of the same event or transaction.

First, although plaintiff asserts that both cases involve the same "money," he has cited no evidence that an identifiable fund of money is involved in both cases. Instead, it appears that the only identifiable property

6

involved in the two cases is the stock and real estate that is the subject of the respective contracts at issue, and it is undisputed that this property is entirely different in the two cases.

Second, plaintiff has pointed to no common factual issues in the two cases. Although issues relating to Williams' and Mitan's alleged scheme to defraud may be similar in both cases, Rule 905-2 requires that factual issues be identical, not merely similar.

Third, the events and transactions out of which the two cases arose are entirely separate and distinct. In this case, the underlying transaction is Frazier's sale to Williams of Perma Clad stock and related real estate, while the underlying transaction in Ross is the completely separate sale by Ross to Williams of the stock of Super 1, Inc.

Finally, the fact that Williams and Mitan are parties to both suits is irrelevant. The presence of common parties is not a ground for finding cases related under Rule 905-2.

7

Motion to Stay and to Compel Arbitration

Williams contends that, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., as well as Georgia law governing arbitration, O.C.G.A. § 9-9-1 et seq., this suit should be stayed and an order compelling arbitration should be entered in accordance with the following arbitration clause contained in Section 13.1 of the Stock Purchase and Real Property Purchase Agreement:

> Any controversy or claim arising from or relating to this Stock Purchase and Real Property Purchase Agreement, or the breach thereof (other than for either party's refusal to close) shall be settled by binding arbitration, administered by the American Arbitration Association in Atlanta, Georgia, under its rules and judgment and the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Any party shall have the absolute right to remove any litigation between the parties hereto to binding arbitration. The winning party in arbitration shall be entitled to reasonable arbitration attorney fees from the losing party. Where a decision is split, each party shall be responsible for their own attorney fees.

Frazier contends that the arbitration agreement is unenforceable because the Stock Purchase and Real Property Purchase Agreement was never consummated and is therefore unenforceable. Alternatively, Frazier contends that Williams waived the right to compel arbitration by failing to perform its obligations under the contract. Frazier also argues that the

8

AO 72A
(Rev.8/82)

arbitration agreement is unenforceable because of both fraud in the inducement and fraud in the factum, or execution, of the agreement. Finally, Frazier argues that the motion for a stay should be denied because defendant Mitan is not a party to the arbitration agreement and thus cannot be compelled to arbitrate.

The Court concludes that the arbitration agreement is enforceable, and that an order compelling arbitration and staying this action is therefore appropriate. First, there is no question that the parties entered into a valid and binding contract containing an arbitration agreement. Citing <u>Coldmatic Refrigeration of Canada, Ltd. v. Hess</u>, 257 Ga. App. 753 (2002), Frazier contends that the arbitration agreement is unenforceable because the contract was never consummated. In <u>Coldmatic</u>, however, the court found that the parties' written agreement "contemplated that it was incomplete and that future negotiations were in store regarding essential terms." <u>Id.</u> at 755. The court concluded that "the instrument was nothing more than an agreement to agree and therefore unenforceable." <u>Id.</u> at 756. In this case, on the other hand, the parties executed a written agreement containing all essential terms and conditions of Frazier's sale to Williams of Perma Clad

9

stock and related real estate. Where an agreement contains all terms and conditions necessary to form a valid and binding contract, it is enforceable. Roberson v. Eicholz, 218 Ga. App. 511, 513 (1995).

Second, Williams did not waive its right to compel arbitration by allegedly failing to perform its obligations under the contract. An alleged breach of the contract is not an action inconsistent with the right to arbitrate, as Frazier contends. Otherwise, virtually all arbitration agreements would be unenforceable. The case cited by Frazier, McMormick-Morgan, Inc. v. Whitehead Elec. Co., 179 Ga. App. 10 (1986), is unlike this case. There, the court held that a party waived its right to insist upon arbitration of disputes with its subcontractor when it negotiated a final contract and price for all work done with full knowledge of the subcontractor's increased costs and did not demand arbitration for more than three years after agreement had been reached. Id. at 13. There are no similar allegations in this case.

Third, Frazier's claim of fraudulent inducement is a matter for the arbitrator to decide. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967). In Prima Paint, the Supreme Court held that a claim of

AO 72A
(Rev.8/82)

fraud in the inducement of the entire contract, rather than the arbitration agreement itself, is a matter to be referred to the arbitrator. Id. at 404; see also Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir. 1992). Here, although Frazier argues that he was fraudulently induced to enter into the arbitration agreement itself, all of his allegations of fraud go to the contract as a whole rather than the arbitration clause. Therefore, this is an issue that the Court must refer to the arbitrator.

Fourth, Frazier's claim of fraud in the factum is also without merit. Fraud in the factum is "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." Langley v. Federal Deposit Ins. Corp., 484 U.S. 86, 93 (1987). Here, Frazier merely alleges that Mitan signed the contract on behalf of Williams using an alias. There is no allegation that Mitan misrepresented the nature of the contract or that Frazier was not fully aware of its true nature and contents. Cf. Cancanon v. Smith, Barney, Harris, Upham & Co., 805 F.2d 998, 1000 (11th Cir. 1986)(fraud in the factum occurred when defendant's employee represented to plaintiffs, who had no knowledge of English, that documents constituted a money market account agreement when in fact they were a

11

securities account agreement). Whether Mitan was authorized to sign the contract on Williams' behalf has nothing to do with the validity of Frazier's assent to the contract. For its part, Williams does not question the validity of its assent, so there is no issue as to whether a binding contract was created.

Finally, the fact that defendant Mitan is not a party to the arbitration is not grounds to deny the motion for a stay. The fact that other parties to the lawsuit are not parties to an arbitration agreement does not preclude grant of a stay where arbitration has the potential to resolve all disputes. Knorr Brake Corp. v. Harbil, Inc., 556 F. Supp. 489, 493 (N.D. Ill. 1983). Here, it is clear that all the issues in dispute arise out of or relate to the Stock Purchase and Real Property Purchase Agreement between Frazier and Williams, that these issues are arbitrable, and that the results of the arbitration will impact conclusively on Mitan.

Summary

For the foregoing reasons, the Court GRANTS the motion of defendant Williams Fund Private Equity Group, Inc., to stay suit pending arbitration

and to compel arbitration [#4] and DENIES plaintiff's motion to reassign case [#8]. The Court STAYS all proceedings in this action and ORDERS plaintiff and defendant Williams to proceed to arbitration in accordance with Section 13.1 of the Stock Purchase and Real Property Purchase Agreement. Pending completion of arbitration, the Court DIRECTS the Clerk to administratively terminate this action subject to the right of any party to reopen the case within thirty (30) days following issuance of an arbitration award.

IT IS SO ORDERED, this 4th day of April, 2006.

_____
Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

13

AO 72A
(Rev.8/82)